Aloha and good morning. I'm Bill Burgess, Tose. I'm for the Kuroiwa plaintiffs. Two of the plaintiffs from the Kuroiwa case are here, Mr. Jimmy Kuroiwa and Mr. Toby Cravett. I think that, counsel, the thing that I'm interested in having you discuss is the question of sanctions against you under Rule 11. And why or why not that was appropriate? I think it was not appropriate, Your Honor, because it does not and did not pass the test for application of Chapter 11 sanctions. When the focus of the Rule 11 violation is a complaint, as is the case here, then the sanctions can be issued only if the complaint is baseless, factually or legally baseless, and without reasonable and competent inquiry. Well, counsel, I think the thing that concerns me, and I'm speaking only for myself, is that because you were the attorney in Arakaki and obviously knew of the outcome of that case, that essentially this complaint was an attempt to sort of rehash the same ground and therefore, by definition, would have been frivolous. What's wrong with that conclusion? Well, unlike Arakaki, this case deals only with the 1.2 million acres of the ceded lands trust. Arakaki dealt with both that and the Hawaiian homes land. It challenged the constitutionality of the Hawaiian homes. And the distinction is that in Arakaki, the court relied on a previous decision in the Carol Barrett case, which dealt with or which concluded that Patrick Barrett, who was a non-Hawaiian, who had applied for a Hawaiian homestead lease, that it was not redressable. His claim was not redressable because in order to grant a homestead lease to a non-Hawaiian, you had to have the consent of the United States. And Mr. Barrett had testified in his deposition that, no, I don't challenge any of the United States or any law of the United States. Now, to all of those issues, and that was the ruling in the case, there was a sentence in the Barrett case which said that any challenge to Chapter 12, I'm sorry, to Article 12 of the Hawaii Constitution would be a challenge to the Admission Act. But whether Arakaki was right or wrong, it was controlling. It is controlling. So what is in this lawsuit that was not already decided adversely to your clients here? Well, no decision was made as to any of the merits of our claim. The only decision made here was that because you did not sue the United States, you have no standing. I understand that, but isn't that what Arakaki already held? I submit, Your Honor, and I argue that Arakaki did not hold that because that statement, if it were applied to the facts of this case, which do not have anything to do with the Hawaiian Homes Commission case or the Homes Commission Act or granting of lessees, is not controlling. That was an error of law which is reviewed by this court de novo. And let me, if I may, Your Honor, emphasize what I believe is the crux of the appeal, of this appeal and also of the related Curaiva appeal. The related appeal has been submitted on the brief. Correct. So please limit your comments to this case. I will, Your Honor. Congress in 1959, in the Admission Act, unambiguously granted to trust beneficiaries, ceded lands trust beneficiaries, the beneficiaries of the trust, which is at issue in this case, the 1.2 million acres, the right to maintain an action against the trustee, State of Hawaii, in breach of trust. Completely absent from the Admission Act is any requirement that the United States be a party to any such action. Here's the way this circuit put it. And incidentally, if I may, I'd like to reserve two minutes for rebuttal. Our decision in Keakaha and Akaka 1, holding that beneficiaries of the public trust created by Congress may bring a 1983 claim are consistent with the Supreme Court's decision in Souter. Congress enacted the Admission Act, a federal public trust, which by its nature creates a federally enforceable right of its beneficiaries to maintain an action against the trustee in breach of trust. The record of this appeal and the related cases appeals shows that the trustee, State of Hawaii, by its officials and by its agency, the Office of Foreign Affairs, has and continues to breach the trust in two major ways. One, violation of the duty not to comply with trust terms that are illegal or violate public policy. And two, violation of the duty, if it has any authority, to make distributions to trust to beneficiaries. To do so only from net trust income. Now, that theory that you've just articulated, was that not the theory in one of the theories in Arakaki? I would say that it was, Your Honor, although in Arakaki... Under either of your two theories, as I recall in that case, your plaintiffs didn't have standing. So what changed? Arakaki's decision was based on the lack of the United States as a party. Right. And because the United States mandated the Hawaiian Homes Commission Act. So you're saying by dropping the commission, the Homes Commission Act, you got rid of the book for the United States being in. So you didn't have to add a plaintiff of any sort. You just had to strip out a potential defendant. Correct. Now, there was a sentence in Arakaki, lifted from the Barrett case, which said that any challenge to Article 11 is a challenge to the Admission Act. But in that case, the non-addressability was because the U.S. was needed, because Barrett wanted a homestead lease. But this case deals not with the Hawaiian Homes, and not with Parts 1, 2, and 3 of Article 12 of the Hawaii Constitution. It deals only with the OHA part. The Admission Act doesn't require or make any reference at all to the Office of Foreign Affairs. The Office of Foreign Affairs didn't even exist in 1959, and it didn't come into existence until 19 years later. Counsel, you have about a minute left, if you'd like to reserve it. Well, Your Honor, just to finish my sentence, there's nothing in the Federal Admission Act that requires or even permits OHA to make distributions of trust income. Good morning. May it please this Honorable Court. My name is Robert Klein. I represent the Trustees of the Office of Foreign Affairs. I would like to yield three minutes of my time to the State Deputy Attorney General, Mr. Gerard Lau, who would like to address the Court as well. Mr. Lau is seated at the Council Table. Your Honor, Judge Seabright got this exactly right. Rule 11 sanctions are not easily obtained in courts. But when an attorney files a complaint, signs a complaint, he is certifying that he's made a reasonable inquiry of the facts, and that his case is supported by existing law or a reasonable, non-frivolous extension of the law according to Federal rules, civil procedure. 11b, the Arakaki case decided by the Ninth Circuit is a case directly on point, as found by Judge Seabright. It controls the elephant. However, Counsel, in Arakaki, we did say that the plaintiffs could attempt to think of additional theories as to which they might have standing. It did leave that door open. And why? It isn't enough that the plaintiffs are wrong for Rule 11 sanctions to be appropriate. So what more is there here when we, in a sense, invited another effort? What makes this sanctionable under Rule 11? Your Honor, with all due respect, I don't think Mr. Burgess came up with another theory. He just rehashed the same old theory and tried to repackage it and represent it to the Court as if it were something new. Mr. Burgess's papers reflect a fundamental disagreement with the Ninth Circuit's case law on this point. The Ninth Circuit clearly stated that if you challenge, as Mr. Burgess's plaintiffs in this case allege in their complaint, any expenditure of trust funds from the 5F Trust, then the United States becomes an indispensable party. And because his clients don't have standing to sue the United States, then the case must be dismissed for lack of an indispensable party. That statement applied in Arakaki and equally to the claims in this case. The complaint actually asserts three claims. First, a violation of 42 U.S.C. 1983 on the basis that the distribution of trust proceeds to Native Hawaiians is a breach of the 5F Admissions Act. That is exactly the claim that was brought in the Arakaki case for which the United States must also be brought in or consent to be sued as an indispensable party. And the complaint that it's unconstitutional is a rehash of Arakaki because in the Kureiva case, again, the plaintiffs are claiming that giving Hawaiians a prorated portion of the trust proceeds is unconstitutional. Although that's exactly what the Admissions Act says, that one of the trust purposes is the betterment of the condition of Native Hawaiians. And in count two, the complaint talked about a breach of the public trust by the state transferring land to the Office of Hawaiian Affairs that were not part of the 5F Trust. And finally, there's an allegation under 42 U.S.C. 1985 of a civil conspiracy to violate Section 1983. So really, the claims in Kureiva mirror the claims in Arakaki almost exactly. Judge Seabright did a careful analysis of the complaint and came to the same conclusion. The trust that I represent, Your Honors, can ill afford to spend money on litigation even when it has some merit, let alone meritless litigation such as this that keeps rehashing theories that have been rejected by the court. As the Ninth Circuit Court said in a case called Yagman, settled case law is the law and not even this court can disagree with it, let alone a federal district judge like Judge Seabright. So I find it very difficult to believe that Mr. Burgess, as this court stated to Mr. Burgess, being counsel of record in the Arakaki case, being required when he files a complaint to certify that he has done a reasonable review of the case law, could not understand the implication of Arakaki and the necessity of bringing the United States in as an indispensable party to his suit. And I should say Judge Seabright made a very modest award under Rule 11 via sanctions. The sanctions that he meted out were less than $3,000. But from my client's standpoint, we certainly hope that the award of sanctions will be upheld as modest as it is because in the event Mr. Burgess decides to formulate another complaint and file it, hopefully he'll follow Rule 11 and think twice because he's been sanctioned once. I don't believe we have any more questions. If you wanted to see the buzzers, give me the time to. Yes, Your Honor, I certainly will. Thank you. Good morning, Your Honors. I am Gerard Lau, Deputy Attorney General representing the State Defendants. Because State Defendants did not ask for or receive an award of sanctions against Mr. Burgess, only OHA did, we are only here to urge affirmance of the denial of the other sanctions counter-motion sought by Mr. Burgess against us, the State Defendants. Not only was Mr. Burgess's counter-motion for sanctions against esteemed holy frivolous by the District Court, Mr. Burgess then compounded that frivolous request by subsequently filing an appeal from its denial, despite the district judge's determination that it was wholly frivolous. This aspect of Mr. Burgess's appeal, appealing the denial of his counter-sanctions motion, is utterly baseless. And it is baseless because he essentially repeated the very same arguments made by the plaintiffs in the underlying case, arguments the District Court had correctly rejected on indispensable party grounds based on the Arakaki decision. Plaintiff's sanctions request was a frivolous attempt to accomplish by way of a sanctions motion what plaintiffs could not accomplish in the underlying lawsuit. Plaintiffs could not evade that rejection by recasting their rejected suit as a sanctions motion. It is one thing for plaintiffs to come to this federal court acknowledging the binding force of the Arakaki v. Lingo decision, and yet come here and seek its ultimate reversal. It's quite another to ask the District Court to sanction the state defendants for simply asserting the binding Arakaki decision in its defense. Plaintiff's sanctions request, therefore, is truly frivolous. Mr. Burgess is essentially asking the state defendants to be sanctioned for urging the Ninth Circuit to follow its own precedent. Mr. Burgess should have confined his appeal to the sanctions awarded against him, rather than unreasonably expand his appeal to insist on baseless counter-sanctions against the state. Accordingly, state defendants respectfully ask that this Court affirm the denial of Mr. Burgess' sanctions request. Thank you, Your Honor. Thank you, Mr. Lau. Mr. Burgess, you have about a minute remaining for rebuttal. One minute, Your Honor, did you say? Yes. Okay. I'll be very brief then. As Judge Graber pointed out, Arakaki did leave the door open to possible alternate theories of standing, and this Circuit, in that case, specifically declined to enter final judgment. As the record shows on remand, the trial court also expressly declined to enter any final judgment. She said that, Mr. Burgess, we are not dismissing your case. This is not a dismissal. She put that into the final order, closing the case. She simply closed the case without entering any final judgment. That made it, of course, impossible to file an appeal. But because it was not appealable, it is not res judicata. It is not binding on this Court. I believe that the day versus a promiona and the 25 years of jurisprudence of this Circuit is the controlling law on the question of whether the United States is an indispensable party, and that the answer to that is no, it is not. Thank you. Thank you, counsel. We appreciate the arguments of both parties, and the case argued is submitted. We have two more cases on the docket, and just for those who are here, we'll hear one more and then take a short break before the final argument. You can plan your time accordingly. In the next case on the argument docket is day versus promiona. Perfect.
judges: Beezer, Graber, Fisher